UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP SIMONE and GERTRUDE SIMONE,    :

                Plaintiffs,    :

    -against-    :

UNITED STATES OF AMERICA,    :

              Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 10 2009 ★

LONG ISLAND OFFICE

COMPLAINT

**CV-09 3904**

WEXLER, J.

WALL, M.J.

Plaintiffs Philip Simone and Gertrude Simone, by their attorneys Dailey & Selznick, for their complaint against defendant the United States of America, aver as follows:

### PARTIES

1. Plaintiff Philip Simone ("Simone") is a resident of the State of New York.

2. Plaintiff Gertrude Simone ("Mrs. Simone") is a resident of the State of New York and the wife of plaintiff Simone.

3. Defendant is the government of the United States of America acting through its departments, officers, employees, and agents, including without limitation, the Department of Justice (the "Department"). The Department is the primary law enforcement agency of the United States and includes, *inter alia*, the Office of International Affairs and the U.S. Marshals Service. Among other things, the Office of International Affairs and the U.S. Marshals Service are responsible for identifying and locating fugitives who are wanted for extradition to foreign countries. The Office of International Affairs in Washington, D.C. is a section of the Criminal Division that provides advice and assistance on international criminal matters and is responsible for coordinating and gathering evidence relating to the extradition of international fugitives. The U.S. Marshals Service, acting through the International Investigations Branch of its Investigative Operations Division, is responsible for identifying, locating, and apprehending fugitives who are wanted by foreign nations and believed to be in the United States.

## JURISDICTION

4. On or about November 4, 2008, plaintiff Simone filed a timely administrative claim with the Department for the injuries caused by the conduct described in this complaint. The Department failed to make a final disposition of his claim within six months of filing.

5. On or about November 13, 2008, plaintiff Mrs. Simone filed a timely administrative claim with the Department for the injuries caused by the conduct described in this complaint. The Department failed to make a final disposition of her claim within six months of filing.

6. Defendant is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1346. Venue is proper pursuant to 28 U.S.C. § 1391(e).

## STATEMENT OF FACTS

7. On April 22, 2008, the Mexican Government, acting through its Ambassador to the United States, Arturo Sarukan, sent a diplomatic note to the Secretary of State, Condoleezza Rice, requesting the arrest and extradition of "Phil Anthony Simone." The note stated that "Phil Anthony Simone" and Thomas E. Grisard had been charged with the crime of child prostitution in Mexico in 2002 and a warrant for their arrest had been issued. The note also stated that three victims had "fully recognized and identified" a person named "Phil Anthony Simone" on July 9, 2002 from a photograph appearing on Passport Number 155378776. A translation of the April 22, 2008 diplomatic note is attached as Exhibit A.

8. The April 22, 2008 diplomatic note referred to a May 25, 2007 diplomatic note from the Mexican Government, which also requested the arrest and extradition of "Phil Anthony Simone." A translation of the May 25, 2007 note is attached as Exhibit B. The May 25, 2007 note attached a drivers license photograph of Simone, listed his birth date as and said he could be found at 1027 North Third Street, New Hyde Park, New York.

9. Prior to May 2, 2008, employees of the Department whose identities are presently unknown to plaintiffs, but on information and belief include employees of the Office of International Affairs and U.S. Marshals Service, conducted an investigation in Washington, D.C. to determine the legal sufficiency of Mexico's request for extradition and to identify and locate the "Phil Anthony Simone" named in the diplomatic notes (the "Extradition Investigation"). As a result of the Extradition Investigation, the Department determined that Simone was the "Phil Anthony Simone" accused of child prostitution in Mexico in 2002 and directed the United States Attorney for the Eastern District of New York to obtain a warrant for his arrest.

10. On May 2, 2008, Richard T. Lunger, Assistant United States Attorney for the Eastern District of New York ("Lunger"), filed a Complaint and Affidavit in Support of Application For Arrest Warrant with the United States District Court for the Eastern District of New York requesting that an arrest warrant be issued for Simone. The Lunger affidavit attached translations of the two diplomatic notes and a driver license photograph of Simone. Lunger told the Court, *inter alia*, that Simone and Thomas E. Grisard ("Grisard") had "participated in and orchestrated a scheme to coerce underage boys to engage in child prostitution" and that Simone had been "positively identified" by investigators with the U.S. Marshals Service by comparing his drivers license photo with a photograph provided by the Mexican authorities. Based on the Lunger affidavit, a warrant for the arrest of Simone was issued by the Honorable Arlene R. Lindsay, U.S. Magistrate Judge for the United States District Court for the Eastern District of New York, on May 2, 2008.

11. On May 5, 2008, employees of the U.S. Marshals Service attempted to arrest Simone at his home in New Hyde Park, New York at 7:20 a.m. A contingent of U.S. Marshals descended on his home, which at the time was occupied by Mrs. Simone, his stepdaughter, and his thirteen year-old son who was getting ready for school. Although the marshals were told that Simone had left for work in New Jersey, they remained in his house for two hours, terrifying his family and alarming his neighbors.

-3-

12.  Later in the morning of May 5, 2008, while the first group of marshals held Mrs. Simone in custody at their home, a second group of U.S. Marshals arrested Simone at his office at Merrill Lynch in Jersey City, New Jersey.  Simone was strip searched, confined in handcuffs and leg irons, fingerprinted, photographed, imprisoned at the federal detention center in Newark, New Jersey, falsely accused of being a fugitive from justice, and otherwise restrained without consent or legal justification.  Simone was told he had been accused of committing child prostitution in Guadalajara, Mexico on March 22, 2002 and would be extradited to Mexico, along with Grisard.

13.  Simone was falsely arrested by the Department.  He was not the person identified by the victims of the crime in Guadalajara, Mexico in 2002, had not been to Mexico in thirty years, had not traveled outside the United States since 1978, and did not have a passport.  Simone did not have a criminal record and had never been accused of criminal wrongdoing, especially the loathsome crime of child prostitution.  He was at work at Merrill Lynch on the day the alleged crime was committed in Mexico.

14.  Based on a second and more careful review of the information provided by Mexico, the Department moved to dismiss the criminal charges against Simone on May 9, 2008.   On May 15, 2008, Robert Kirsh, an Assistant United States Attorney in New Jersey, said his office recommended dropping the charges as the result of a "further investigation of the information provided by Mexico, which formed the basis of the complaint...."

15. In falsely arresting Simone, the Department acted in a reckless and grossly negligent manner.  Establishing the correct identity of an accused is essential to effective law enforcement, particularly where there are multiple persons with the same name and the officers responsible for identification did not personally interview the victims to determine the identity of the accused. The Extradition Investigation egregiously departed from minimally acceptable identification procedures in identifying Simone as the person accused of committing child prostitution in Mexico in 2002.  Among other things, the Department:

-4-

(a)    Failed to inquire whether there was a person or persons in the United States by the name of "Phil Anthony Simone" who had a history of child prostitution and was in Mexico in 2002. At the time of the Extradition Investigation, there were at least fourteen "Phil Simones" living in the New York area alone, including a convicted sex offender who had been incarcerated at the Avenel Diagnostic and Treatment Center in Woodbridge, New Jersey. A search of law enforcement records would have immediately revealed the identity of the convicted sex offender named "Phil A. Simone," whose photograph appeared on the website of the New Jersey Department of Corrections at the time of the Extradition Investigation. (A Google search identified the suspect in less than 30 seconds). Further inquiry would have revealed the convicted sex offender served time at the Avenel facility with Grisard, the other fugitive accused of participating in the crime. On information and belief, the convicted sex offender named "Phil A. Simone" was the person accused of child prostitution. He is still at large.

(b)    Failed to make any inquiries concerning the background of Simone to determine if there was reason to believe he was the "Phil Anthony Simone" accused of child prostitution in Mexico, as standard law enforcement practices require, including inquiries relating to his criminal record, if any, and his whereabouts at the time of the crime in 2002. Simone did not have a criminal record and had never been accused of criminal wrongdoing, much less the heinous crime of child prostitution. He had a stable family life and a spotless record at Merrill Lynch, where he had been an exemplary employee for 27 years and had never been the subject of disciplinary action. He was working in New Jersey at the time of the alleged crime. The incongruous pairing of a stable, hard-working professional with a notorious sex offender like Grisard, who had been incarcerated for fifteen years for preying on young children, was a red flag that required further inquiries concerning the identity of the real "Phil Anthony Simone."

(c)   Failed to address obvious questions raised by the photograph supplied by the Mexican authorities that identified Simone as an accused sex offender. The April 22, 2008 diplomatic note said three victims had "fully recognized and identified" a "Phil Anthony Simone" from a photograph in Passport Number 155378776, but did not attach the passport photo.  Rather than request the passport photo, the Department used the photo supplied with the first diplomatic note.  When employees of the U.S. Marshals Service compared the photograph provided by Mexico with a photograph obtained from the Department of Motor Vehicles, they realized they were identical. Since it is highly unusual for a passport photo to be identical to a drivers license photo--they are different sizes and taken at different times and under different conditions--it was obvious the photograph in the May 25, 2007 diplomatic note was not the passport photo shown to the victims.  The U.S. Marshals Service also questioned how Mexico had obtained Simone's drivers license photo when it was protected from disclosure by the Driver's Privacy Protection Act, 18 U.S.C. § 2721, and New York privacy rules. Despite the questions and anomalies, the Department did not ask Mexico for the passport photo and did not follow procedures mandated by § 608 of the United States Attorneys Criminal Resource Manual, which require affidavits from the identifying witnesses with an attached photo of the alleged fugitive, initialed and dated by the identifying witnesses.

(d)   Failed to contact the Bureau of Consular Affairs to determine if Simone had been issued Passport Number 155378776.  The April 22, 2008 diplomatic note stated that three victims had identified "Phil Anthony Simone" from the photograph appearing in Passport Number 155378776.  If the Department had checked with the Bureau of Consular Affairs, it would have learned that Simone did not have a valid passport--his passport expired on February 18, 1987, fifteen years before the alleged offense.  If Simone did not have a passport, it was highly unlikely that he was the "Phil Anthony Simone" identified by the victims of the crime.

(e)   Failed to request the passport files for Passport Number 155378776, which on information and belief was issued to the convicted sex offender named "Phil A. Simone."  If the Department had requested the passport files, it would have learned that the person identified by the victims had a different birthday, address, height, and weight than Simone. The "Phil A. Simone" issued Passport Number 155378776 lived in East Hanover, New Jersey, was born on

, was 5'-10" tall, and weighed 165 pounds.  Simone lived in Long Island, was born on                         , was 5'-4" tall, and weighed nearly 200 pounds.

(f)   Failed to interview a potential corroborating witness, Grisard, to determine if Simone was the "Phil Anthony Simone" accused of child prostitution.  Grisard, who had been incarcerated with the convicted sex offender "Phil A. Simone," was arrested by the U.S. Marshals Service on March 12, 2008 and was being held without bail in the custody of the Department at the time of the Extradition Investigation.  He subsequently waived an extradition hearing and agreed to be returned to Mexico.  The diplomatic notes said Simone and Grisard were joint participants in the child prostitution scheme. If the Department had interviewed Grisard before it arrested Simone, it would have likely learned that plaintiff was not the "Phil Anthony Simone" charged with child prostitution in Mexico.

16.  In obtaining the arrest warrant on May 2, 2008, the Department failed to disclose material information to the court that was critical to the determination of probable cause.  Among other things, the Department failed to tell the Court that:

(a)   The "Phil Anthony Simone" accused of committing child prostitution in Mexico had been identified from a passport photo shown to the victims in 2002.

(b)   The photograph supplied by Mexico in 2007, and attached as an exhibit to the Lunger affidavit, was a drivers license photo that had never been shown to the victims.

(c)     The "positive identification" of Simone described in the Lunger affidavit was a meaningless comparison of two copies of the same drivers license photo, neither of which had been shown to the victims.  The Department knew the accused had been identified from a passport photo and knew Mexico had provided a drivers license photo.  James Plousis, the U.S. Marshal for New Jersey, said Mexico provided "a valid driver's license photo that matched the Long Island man."  Plousis further said "he did not know where or how Mexican officers got the photo."  Knowing its "positive identification" was a sham, the Department only provided the Court with one of the two photos used in the comparison.  If both had been provided, it would have been apparent they were copies of the same drivers license photo and undermined the credibility of the identification.

(d)     The Department had not independently verified that Simone was in fact the person identified by the accused.  It did not tell the Court, for example, that it had not determined why Mexico had provided a drivers license photo when the April 22, 2008 diplomatic note said "Phil Anthony Simone" had been identified from a passport photograph, asked the Bureau of Consular Affairs to verify that Simone had been issued Passport Number 155378776, or interviewed Grisard, a potentially corroborating witness in its custody.  The Department attempted to create the impression of an independent inquiry by describing observations made by investigators from the U.S. Marshals Service, but all they confirmed was that Simone had a valid drivers license and received mail at his home.

COUNT I

NEGLIGENCE

17.   Plaintiffs repeat and reallege Paragraphs 1 through 16 of this Complaint.

18.   Defendant had a duty to exercise reasonable care in determining that Simone was the "Phil Anthony Simone" identified by the victims before it applied for an arrest warrant.

19. In determining that Simone was the person accused of committing child prostitution in Mexico, defendant breached its duty to exercise reasonable care by acting in a reckless and grossly negligent manner and egregiously departing from minimally acceptable law enforcement standards.

20. The negligence and gross negligence of the defendant were a proximate cause of the false arrest of Simone.

21. As a result of the negligence and gross negligence of defendant, Simone suffered mental, physical, and financial injury, including without limitation severe emotional distress, neurosis, colitis, high blood pressure, loss of employment, and injury to reputation. The mental, physical, and financial damages suffered by Simone amount to at least $2.5 million.

## COUNT II

### FALSE ARREST

22. Plaintiffs repeat and reallege Paragraphs 1 through 16 of this Complaint.

23. Defendant had a duty to refrain from arresting Simone for extradition to Mexico without probable cause.

24. Defendant did not have probable cause to arrest plaintiff Simone because there was no credible evidence that he was the person accused of committing the crime of child prostitution in Mexico in 2002.

25. Simone was conscious of his arrest and confinement. Although he was a law abiding citizen, plaintiff Simone knew he was under arrest as an international fugitive from justice and an alleged perpetrator of a loathsome crime.

26. Simone did not consent to his arrest or confinement, and his arrest or confinement was not privileged in any way.

27. As a result of the false arrest, Simone suffered mental, physical, and financial injury, including without limitation severe emotional distress, neurosis, colitis, high blood pressure, loss of employment, and injury to reputation. The mental, physical, and financial damages suffered by Simone amount to at least $2.5 million.

## COUNT III

## MALICIOUS PROSECUTION

28. Plaintiffs reassert and reallege Paragraphs 1 through 16 of this Complaint.

29. Defendant commenced a criminal proceeding against Simone by filing a complaint and application for an arrest warrant on May 2, 2008.

30. The criminal proceeding was terminated in favor of Simone when the complaint for an arrest warrant was dismissed on May 9, 2008 and the defendant admitted it had arrested the wrong person.

31. The criminal proceeding was commenced against Simone without probable cause because there was no credible evidence that he was the person accused of committing the crime of child prostitution in Mexico in 2002.

32. The defendant knowingly commenced the criminal proceeding against Simone with malice because it failed to make a full and complete disclosure of the relevant facts to the court.

33. As a result of the malicious prosecution of defendant, Simone suffered mental, physical, and financial injury, including without limitation severe emotional distress, neurosis, colitis, high blood pressure, loss of employment, and injury to reputation. The mental, physical, and financial damages suffered by Simone amount to at least $2.5 million.

-10-

## COUNT IV

## LOSS OF CONSORTIUM

34. Plaintiffs reassert and reallege Paragraphs 1 through 16 of this Complaint.

35. The false arrest and resulting injuries to Simone have caused Mrs. Simone to lose the comfort, society, friendship, and consortium of her husband.

36. As a result of the unlawful conduct of defendant, Mrs. Simone has been injured in the amount of $250,000.

WHEREFORE, plaintiffs demand:

(a) Judgment against defendant and in favor of plaintiff Simone in the amount of $2,500,000.

(b) Judgment against defendant and in favor of plaintiff Mrs. Simone in the amount of $250,000.

(c) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 10, 2009

DAILEY & SELZNICK

By: *[signature]*
Loren F. Selznick (LFS-8441)

Chrysler Building, 26th Floor
405 Lexington Avenue
New York, New York 10174
(212) 867-1475

Attorneys for Plaintiffs

-11-

EXHIBIT A

# UNOFFICIAL TRANSLATION

03061

The Embassy of Mexico presents its compliments to the Department of State and makes reference to note number 03727, dated May 25, 2007, containing the request for provisional arrest for international extradition purposes of **THOMAS E. GRISARD and PHIL ANTHONY SIMONE**, who are wanted by Mexican authorities for their alleged commission of the crime of PROSTITUCION INFANTIL *(CHILD PROSTITUTION)*.

In this regard, the Embassy requests the Department of State to act as the proper channel to inform the Office of International Affairs at the Criminal Division of the Department of Justice about the following arguments in support of the abovementioned provisional arrest request:

## FACTS

In March 2002, Francisco Xavier Zarate Reyes, age 14, and his friend Martin "N", also a minor, were sleeping outside a gay bar called "Caudillos" in Guadalajara, Jalisco, when **THOMAS E. GRISARD and PHIL ANTHONY SIMONE** approached them and struck up a conversation. They asked the boys if they had a place to sleep, to which they answered no. The men then offered to let them spend the night at their house, which the boys accepted, and they went to sleep in the home of both of the accused.

Once they arrived at the house, the accused men and the minors were talking, and later they dined on fruit. Afterwards, **THOMAS E. GRISARD** asked Francisco Xavier Zarate Reyes if he would go to sleep in his bed, since Martin "N" was speaking to **PHIL ANTHONY SIMONE**. Francisco Xavier agreed to sleep with **THOMAS E. GRISARD**, and when the boy was trying to fall asleep, **THOMAS** began to kiss him and say that he liked him, while touching his penis, and then proposed that they have sexual relations. The boy refused, but **THOMAS E. GRISARD** tried to convince him by offering to pay him 200 pesos. However, the boy did not accept.

Francisco Xavier Zarate Reyes finally fell asleep, but woke up later because he felt that **THOMAS E. GRISARD** was performing oral sex on him. The boy got up and saw that **PHIL ANTHONY SIMONE** was performing oral sex on his friend Martin "N". Both of the accused asked the minors to have sexual relations with them, but they refused, so **THOMAS E. GRISARD** and **PHIL ANTHONY SIMONE** threw them out of the house and paid them 200 pesos for having performed oral sex on them.

Francisco Xavier Zarate Reyes believes that he was indeed penetrated by the accused while he was sleeping, because upon waking up he felt desperate, with his stomach full of air. When he sat down, his anus hurt, and felt discomfort for around 5 or 6 hours.

On July 9, 2002, Francisco Xavier Zarate Reyes fully recognized and identified both of the accused, through photographs appearing in copies of the following documents: passport number 155378776, issued to **PHIL ANTHONY SIMONE**; and document number 1047254, which granted **THOMAS E. GRISARD** non-immigrant visitor status in Mexico, issued by the Secretariat of the Interior.

Later, Francisco Xavier Zarate Reyes presented his birth certificate as proof of his age, which showed that on the day of the facts he was 14 years old, having been born on

On March 22, 2004, a psychological examination was performed on Francisco Xavier Zarate Reyes, which determined that he had personality treats consistent with a person who has been raised in a disintegrated and dysfunctional family environment, with a lack of affection from a young age, as well as psychological development lacking direction and firm behavior. This generates an inability to confront and resolve problems, thus causing a need in the boy to resolve his problem with the closest option at hand, without regard for the consequences. However, he is aware of the actions he is about to perform, including actions of a sexual nature to satisfy immediate material needs.

Moreover, Antonio Madrigal Cortes, Coordinator of the National Foundation for Finding Lost and Missing Children (FIND), *Asociación Civil*, stated that a call had been received at the foundation's offices from a boy of about 10 or 12 years. The boy reported that a *gringo* (a man of US origin) riding a bicycle was handing out fliers advertising English classes at the Plaza Tapatia in Guadalajara. The boy had gone to take these classes and the *gringo* was making sexual overtures at the students, since he would ask them to choose where they wanted to have class, in the living room, dining room, hallway, or bedroom, wherever they felt most comfortable. The boy did not want to say anything more and hung up the telephone.

As a result, Daniel Ledezma, who worked for the National Foundation for Finding Lost and Missing Children (FIND), *Asociación Civil*, went to Plaza Tapatia to corroborate the previous phone call. Upon arriving at the plaza, he saw a man from the United States accompanied by three minors. On another occasion, Daniel Lopez Ledezma returned to the Plaza and the same man introduced himself to Daniel Lopez Ledezma as **PHIL ANTHONY SIMONE** (also known as **FELIPE**), and gave him a flier so he could go take English classes. Later on, Daniel Lopez Ledezma saw **FELIPE** speaking with another one of this victims, Jose Armando Gutierrez Nuñez, who took English classes with the accused.

Afterwards, Daniel Lopez Ledezma interviewed Armando Gutierrez Nuñez and asked him what he knew about **FELIPE**, and he said that he didn't want any problems. Days later, Jose Armando Gutierrez Nuñez spoke with the National Foundation for Finding Lost and Missing Children (FIND), *Asociación Civil*, to provide the address of **FELIPE**, located at Calle Juarez 118, Apartment 90, Guadalajara, Jalisco. Daniel Lopez Ledezma immediately went to **FELIPE**'s home, and upon arriving he found the door open. He approached and saw **FELIPE** sitting in an armchair with a boy leaning on his chest and two other boys standing at either side of the accused. Two other boys were sitting in another armchair in front of the accused. **FELIPE** invited Daniel Lopez Ledezma to step into the apartment. Lopez Ledezma sat at the center table and from there could see where Armando Gutierrez Nuñez was sitting (in a bedroom). **FELIPE** introduced the two and Armando Gutierrez Nuñez served as translator while **FELIPE** explained to Ledezma what books he would need for his English class.

Jose Armando Gutierrez Nuñez declared that he knew for a fact that **THOMAS E. GRISARD** and **PHIL ANTHONY SIMONE** lived at Calle Juarez 118, Apartment 90, since he was a sexual partner of **PHIL ANTHONY SIMONE** (whom he knew as **PHILIP**) for approximately one month. He stated that he had met both of the accused when he was 17 years old, and later he became **PHILIP**'s partner.

Jose Armando Gutierrez Nuñez stated that when he was living with both of the accused, he noticed that they would take boys between 12 and 17 years of age into their apartment, feed them, bathe them, and have sex with them. For this, the men would pay the boys between 200 and 300 pesos. The deponent also stated that the men would recruit minors at Plaza Tapatia and at the Caudillos gay bar, in order to provide them with English classes and to have sexual relations with them.

On July 9, 2002, Jose Armando Gutierrez Nuñez fully recognized and identified both of the accused as the people who committed the crimes described herein, through photographs appearing in copies of the following documents: passport number 155378776, issued to **PHIL ANTHONY SIMONE**; and document number 1047254, which granted **THOMAS E. GRISARD** non-immigrant visitor status in Mexico, issued by the Secretariat of the Interior.

Leonardo Bravo Corrales declared that he met **THOMAS E. GRISARD** when he was 15 years old in Plaza Tapatia, in Guadalajara. The accused introduced the boy to **PHIL ANTHONY SIMONE** (whom the boy also knew as FELIPE), as if he were the brother of the accused. On one occasion, the boy went with **THOMAS E. GRISARD** to the house of one of the accused's friends (Alfonso Arciniega Bañuelos). Inside, the boy saw **FELIPE** naked with two boys who were approximately 15 years old, performing oral sex on FELIPE. Upon seeing this **THOMAS E. GRISARD** became aroused and joined them. Both men offered Leonardo Bravo Corrales to have sex with them, but he did not accept.

In addition, Leonardo Bravo Corrales stated that during the time he spent with both of the accused, they would show him pornographic magazines and videos. One time, he saw two minors performing oral sex on **THOMAS E. GRISARD**, who would arouse them by showing them pornographic videos and magazines, while masturbating in front of them. The accused would then fondle their genitals, and the deponent would even be invited to have sexual relations with them, but he refused. The deponent also stated that knew for a fact that **THOMAS E. GRISARD, FELIPE** and other men from the United States would have orgies with minors, and that they liked to do so with boys between 12 and 18 years of age.

On July 9, 2002, Leonardo Bravo Corrales also fully recognized and identified both of the accused as the people who committed the crimes described herein, through photographs appearing in copies of the following documents: passport number 155378776, issued to **PHIL ANTHONY SIMONE**; and document number 1047254, which granted **THOMAS E. GRISARD** non-immigrant visitor status in Mexico, issued by the Secretariat of the Interior.

Juan Carlos Lucero Avila declared that when the crimes occurred, he used to sell crafts at Plaza Tapatia, and for this reason he could observe that **PHIL ANTHONY SIMONE** (whom he knew as FELIPE) would go to the Plaza on roller-skates to hand out flyers advertising English classes. The deponent also presented one of these flyers as proof. The deponent also stated that on one occasion, he went with his friend Carlos, who was a prostitute for homosexuals, to the Norman apartments at Calle Juarez 118, Guadalajara, Jalisco. FELIPE emerged from one of the apartments holding the hands of two boys, approximately ages 14 and 15, and took them to another apartment in front of the first one.

## CONCLUSIONS

The evidence described above thoroughly demonstrates that the foreigners **THOMAS E. GRISARD** and **PHIL ANTHONY SIMONE** gave the minors Francisco Xavier Zarate Reyes and Martin "N" a sum of money in exchange for oral and anal sexual relations. Also, the witness statements previously described herein prove that both of the accused handed out flyers in Plaza Tapatia and in a bar called Caudillos, which was popular with homosexual men, in Guadalajara, Jalisco. This they did in order to recruit underage boys, later taking them to their home, giving them English classes, money, food or clothes, in order to convince them to have sexual relations with them and so that the men could have their way with the boys.

In addition, it should also be noted that the minors recruited by both of the accused were children living on the street, lacking any family protection, and their monetary situation led them to allow the performance of sexual acts against them in order to receive food or money for their survival, as occurred with Francisco Xavier Zarate Reyes and Martin "N". This is in addition to the degradation suffered by the minors, since some of them suffered health problems because they contracted sexually transmitted diseases.

Furthermore, the Mexican Federal Attorney General's Office would like to inform that **THOMAS E. GRISARD** was arrested on March 12, 2008 in New Jersey, and is now subject to international extradition proceedings. If the Judge presiding over his case determines that he is criminally responsible for committing **PROSTITUCION INFANTIL** *(CHILD PROSTITUTION)*, against Francisco Xavier Zarate Reyes (14 years old at the time), he will be sentenced to a maximum of 7 years in prison and will be fined the equivalent of 500 days minimum salary, in accordance with the Penal Code of the State of Jalisco, Article 174 Bis, in effect at the time of the commission of the crime. This legal provision states:

"Any person who, in exchange for money, kind or services, has sexual relations or obtains the performance of any erotic sexual act with a person who is either under age 18 or who is otherwise incompetent, shall be sanctioned as follows:

I.     Two to four years imprisonment, and payment of fine equal to 100 to 200 days of minimum wage, if the victim is older than 15 but younger than 18, if the perpetrator is aware of this latter fact;

II.    Four to seven years imprisonment, and payment of fine equal to 200 to 500 days of minimum wage, if the victim is younger than 15."

The Embassy of Mexico avails itself of the opportunity to reiterate to the Department of State the assurances of its kind and distinguished consideration.

Washington, D.C., April 22, 2008

To the Department of State
Washington, D.C.

**EXHIBIT B**

# UNOFFICIAL TRANSLATION

03727

Washington, D.C., May 25, 2007

Madame Secretary:

On behalf of my Government, I have the honor of referring to the Extradition Treaty signed between the United Mexican States and the United States of America, in order to request from Your Excellency's Government, on the basis of Articles 1, 2 and particularly Article 11 of the Extradition Treaty, the **PROVISIONAL ARREST FOR INTERNATIONAL EXTRADITION PURPOSES of THOMAS E. GRISARD and PHIL ANTHONY SIMONE**. These persons are wanted by Mexican authorities for having committed the crime of **PROSTITUCION INFANTIL** *(CHILD PROSTITUTION)*. As a result, an arrest warrant was issued for the accused as part of dossier number 2001/2004-B, by the Tenth Judge for Criminal Matters in Puente Grande, Municipality of Tonala, Jalisco.

The **URGENCY** to present the request mentioned in the above paragraph is justified because it is known that **PHIL ANTHONY SIMONE** can be found at 1027 N. Third Street, New Hyde Park, New York 11040, while **THOMAS E. GRISARD** can be found at 41 Maple Drive, Spring Lake, New Jersey 07762. It is feared that they will move to another location and will no longer be found.

(ARREST WARRANT...)

To Her Excellency
Condoleezza Rice
Secretary of State
Washington, D.C.

## ARREST WARRANT

On April 2, 2004, the Tenth Judge for Criminal Matters in Puente Grande, Municipality of Tonala, Jalisco, issued an arrest warrant in criminal case number 2001/2004-B for **THOMAS E. GRISARD and PHIL ANTHONY SIMONE**, due to their alleged perpetration of the crime of **PROSTITUCION INFANTIL** *(CHILD PROSTITUTION),* as set forth by and punishable under Articles 11 and 174 bis of the Penal Code of the State of Jalisco, in force at the time the crime was committed.

The conduct attributed to the accused, for which the arrest warrant was issued, is punishable under the laws of both countries with a maximum prison sentence of no less than one year, as established by Article 2, paragraph 1 of the Extradition Treaty between the United Mexican States and the United States of America, in relation to item 5 of the Treaty's appendix.

The elements constituting the crime, which led the Judge to issue the arrest warrant for the accused, are based on the following:

## F A C T S

In the Plaza Tapatia of Guadalajara, Jalisco, the alleged perpetrators used to give out flyers promoting English classes for street children, with the purpose of recruiting them in the house where they lived, in order to have sexual relations with them in exchange for English classes, lodging, food and/or money.

In this way, in March 2002, a minor named Francisco Xavier Zarate Reyes and his friend Martin "N" were sleeping at the exit of a gay bar called Caudillos, when **THOMAS E. GRISARD and PHIL ANTHONY SIMONE** approached them to strike up conversation and ask them to stay the night in their home, located at *calle Nicolas Leaño n. 106,* Guadalajara, Jalisco. The minors accepted the proposal.

Once they were in the house of **THOMAS E. GRISARD and PHIL ANTHONY SIMONE**, the minors dined on fruit and drank wine before going to sleep. Later, when Francisco Xavier Zarate Reyes was trying to fall asleep, **THOMAS E. GRISARD** started to kiss him, told the boy that he liked him and touched his penis. He then asked him to have sex with him for 200 (two hundred) Mexican pesos, but Francisco Xavier Zarate Reyes did not accept. However, he had drunken too much and fell asleep, and later he awoke because he felt **THOMAS E. GRISARD** performing oral sex on him, and he turned on the light and saw **PHIL ANTHONY SIMONE** doing the same to his friend Martin "N".

That same night, **THOMAS E. GRISARD and PHIL ANTHONY SIMONE** asked the boys to have sexual relations with them, but they did not want to do so. For this

reason the American men became upset and chased them away. Despite this, **THOMAS E. GRISARD** gave the boys 200 (two hundred) Mexican pesos.

Francisco Xavier Zarate Reyes assumed that he was penetrated by **THOMAS E. GRISARD** while he slept, because when he woke up he felt desperate, with his stomach full of air. When he sat down his anus hurt, and he felt this discomfort for around five or six hours.

The facts mentioned herein and the evidence gathered during the investigation led the Judge in charge of the case to issue an arrest warrant for both of the accused.

## GENERAL PERSONAL DATA

In compliance with Article 11, paragraph 1 of the Extradition Treaty signed between the United Mexican States and the United States of America, upon which this request is based, the following are the general personal data available on the accused:

| | |
|---|---|
| Name | **THOMAS E. GRISARD** |
| Nationality | American |
| Date of Birth | |
| Remarks | A photograph of the accused is attached |
| | |
| Name | **PHIL ANTHONY SIMONE** |
| Nationality | American |
| Date of Birth | |
| Remarks | A photograph of the accused is attached |

In compliance with Article 19 of the Extradition Treaty signed between the United Mexican States and the United States of America, the Mexican government requests the confiscation and surrender of all items, instruments, and objects of value, or any documents related to the crime, even if they were not used to carry out said crime, that are found in the possession of the accused at the time of their arrest, or at a later date, which could be used as evidence within the criminal investigation being carried out against him.

I assure Your Excellency that I will submit the formal extradition request with sixty (60) days from the date of confirmation of the **PROVISIONAL ARREST** for extradition purposes of the accused, **THOMAS E. GRISARD and PHIL ANTHONY SIMONE.** Therefore, I would appreciate being informed as soon as possible the exact date when this sixty/day period, mentioned in the Extradition Treaty, starts running.

In light of the above, Madame Secretary, and since this petition satisfies the conditions

described in the Extradition Treaty currently in force between our two countries and, to the best of my knowledge, also satisfies the internal procedures of the Mexican State as well as the procedures established by the Extradition Treaty to process this petition of **PROVISIONAL ARREST** for extradition purposes, I hereby request Your Excellency's kind mediation so as to secure from the competent U.S. authorities, including the judicial authorities, the extradition of **THOMAS E. GRISARD** and **PHIL ANTHONY SIMONE** from the United States to Mexico.

We thank you in advance for Your Excellency's valuable assistance concerning this matter. I avail myself of this opportunity to renew to Your Excellency the assurances of my highest and most distinguished consideration.

Arturo Sarukhan
Ambassador