

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

PHILIP SIMONE and GERTRUDE SIMONE,

        Plaintiffs,

-against-

UNITED STATES OF AMERICA,

        Defendant.

AMENDED MEMORANDUM & ORDER

09-CV-3904 (TCP)(AKT)

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★ OCT 0 9 2012 ★

LONG ISLAND OFFICE

--------------------------------------------------------------X

PLATT, District Judge.

        Before the Court are Defendant's jointly-filed and briefed Motions to Dismiss[1]

and for Summary Judgment (ECF No. 43) and Plaintiffs' cross-Motion for Summary Judgment

(ECF No. 47). For the reasons stated below, the Court: (1) **DENIES** Defendant's Rule 12(b)(1)

Motion to Dismiss; (2) **DENIES**, in part, and **GRANTS**, in part, Defendant's Rule 12(b)(6)

Motion to Dismiss; and (3) **DENIES** the parties' cross-Motions for Summary Judgment.

---

1 Defendant's Motion to Dismiss is filed under both Rule 12(b)(1), for lack of subject matter
jurisdiction and 12(b)(6), for failure to state a claim.

## A. Parties

Philip Simone ("Plaintiff-Simone") and Gertrude Simone ("Mrs. Simone") (jointly, "Plaintiffs") reside in New York. Pls.' Am. Compl. ¶¶ 1-2.[2] "Defendant is the government of the United States of America acting through its departments, officers, employees, and agents, including . . . the Department of Justice." *Id.* at 3.

## B. Facts

"In a March 27, 2006 letter, the Attorney General of Mexico requested assistance from the FBI Americas Unit [in Washington, D.C.] in obtaining photographs of Thomas E. Grisard and Phil Anthony Simone." Pls.' 56.1 Stmt ¶ 1 (citing Pls.' 56.1 Stmt., Ex. 1 (hereafter "the Letter")). Mexico wanted Grisard and Phil Anthony Simone ("Suspect-Simone") on charges of child prostitution. *Id.* The FBI Americas Unit contacted the FBI's Newark office to ask for help in obtaining photographs of the suspects. *Id.* at ¶ 2. The FBI's Newark office assigned Special Agent Avgoustis Karaminas, of the FBI's Newark office, to the task. *Id.* at ¶ 3.

Karaminas "found eleven Simones in the New Jersey DMV database—ten with the first name 'Philip' and one 'Phil,' like the one sought by Mexico." *Id.* at ¶ 6; *see also* the Letter ("in order to obtain photographs of . . . Phil Anthony Simone . . . ."). During his deposition, Karaminas was asked if he understood his duties if he found multiple persons with the same

---

2 While not explicitly stated, Plaintiffs still reside, presumably, in their New Hyde Park, New York home or in another residence within the Eastern District of New York; presumably, that is why the Eastern District of New York is the proper venue for this suit. *See, e.g.,* Pls.' Am. Compl. ¶ 15. Defendant does not object on venue grounds.

name; he responded that his "job was not to identity the target, [but to] provide [] a picture." Karaminas Dep. 66:6-15, Pls.' 56.1 Stmt., Ex. 9.

When Karaminas entered the Social Security Number provided by the Mexican authorities, he found that the number did not belong to any of the Simones found in the New Jersey database; instead, the number belonged to Gertrude Simone, wife of Plaintiff-Simone, who lived in New York. Pls.' 56.1 Stmt. ¶ 7 (citing Karaminas Dep. 36:5-9, Aug. 4, 2011, Pls.' 56.1 Stmt., Ex. 8). Karaminas did not check the New Jersey Department of Corrections website for Suspect-Simone; this website contained a picture of Suspect-Simone. Pls.' Am. Compl. ¶ 11. Karaminas obtained the home address and birth date for Gertrude Simone's husband, Philip A. Simone. Pls.' 56.1 Stmt. ¶ 7. He reported Plaintiff-Simone's picture to the FBI's America Unit. *Id.* at ¶ 10.

When Karaminas reported his findings to the FBI's Americas Unit, he reported a different name (Philip A. Simone) than the name provided to him (Phil Anthony Simone); Karaminas did not repeat back the Social Security Number that he was given originally because "there was a different Social Security Number attached to this particular Simone." Pls.' 56.1 Stmt. ¶ 10. Karaminas did not tell the FBI Americas Unit that the Social Security Number that was provided to him (by the FBI's America Unit via the Letter) did not belong to a Suspect-Simone (nor, indeed, to any Phil Simone). *See* Karaminas Dep. 36:10-14.

Because the Simone that Karaminas reported held "a New York State motor vehicle operator's license a photograph was unable to be obtained by [the FBI's] Newark [office]." Pls.' 56.1 Stmt. ¶ 10 (citing Memo from Karaminas to FBI's Americas Unit, June 5, 2006, Pls.' 56.1 Stmt., Ex. 12). In the Memo, Karaminas repeated the exact name and Social Security Number

3

provided to him for Grisard. *See id.*[3] and Karaminas Memo. Karaminas repeated neither as to Simone. *See id.* and Karaminas Memo.

After receiving this information, the FBI Americas Unit "contacted the FBI's Albany, New York office to obtain a DMV photograph of the Simone identified by Karaminas." *Id.* at ¶ 11 (citing Michael Butsch[4] Dep. 38:25-37:3, June 22, 2011, Pls.' 56.1 Stmt, Ex. 13). FBI Special Agent Andrew Vickery, of the Albany office, transmitted a New York DMV photo of Plaintiff-Simone to the FBI's Americas Unit. *Id.* at ¶ 12 (citing Memo from Vickery to FBI Americans Unit, Pls.' 56.1 Stmt., Ex. 16). On August 24, 2006, Butsch sent Plaintiff-Simone's DMV photograph to the Mexican Attorney General's Office. *Id.* at ¶ 13 (citing Butsch Letter, Pls.' 56.1 Stmt., Ex. 17). In this letter, Butsch told the Mexican Attorney General's Office that the photograph was of "Phil Anthony Simone"—the name the Mexican government had requested originally—not Philip A. Simone, Plaintiff-Simone's name. *Id.*

On May 25, 2007, Mexican authorities sent a diplomatic note to then-United States Secretary of State Condoleezza Rice; the note requested that the United States arrest and extradite, pursuant to the US and Mexican Extradition Treaty of 1978 ("the Treaty"), Grisard and "Phil Anthony Simone." Pls.' 56.1 Stmt. ¶¶ 14-15 (citing the Diplomatic Note, Pls.' 56.1 Stmt., Ex. 19). Included in Mexico's request was a photograph of Plaintiff-Simone, his birth date, as

---

3 Though the Social Security Number is redacted from the exhibit, during Karaminas' deposition, the Government stated that Grisard's Social Security Number matched the number provided by Mexico in the Letter. *See* Karaminas Dep. 17:2-5.

4 Butsch was the FBI's Supervisory Special Agent for International Operations. See Pls.' Am. Compl. ¶ 10.

well as his New Hyde Park address. *Id.* at ¶ 14. The Treaty's Article 10 states that "the request for extradition shall contain the description of the offense for which extradition is requested and shall be accompanied by: . . . (e) The Facts and personal information of the person sought which will permit his identification . . . ." *Id.* at ¶ 15 (quoting 31 U.S.T. 5059). The Treaty's Article 12 states that "[i]f the Executive authority of the requested Party considers that the evidence furnished in support of the [extradition] request . . . is not sufficient [to] fulfill the requirements of this Treaty, that Party shall request the presentation of the necessary additional evidence." *Id.*

The DOJ's Office of International Affairs (OIA) assigned Mari Aponte to handle Mexico's extradition request for Grisard and Simone; after OIA reassigned Aponte, it assigned Andrea Tisi to the matter. Pls.' 56.1 Stmt. ¶ 19 (citing Tisi Dep. 24:25-25:11, June 22, 2011). Tisi testified that the Aponte reviewed the extradition request "for sufficiency under the treaty and U.S. law and [Aponte] determined that she needed more information from Mexico . . . ." Tisi Dep. 27:16-24. On February 29, 2008, Tisi emailed Aponte: "[t]here is almost nothing linking [Plaintiff-]Simone to the incident. Please have Mexico confirm that the facts as I wrote them are correct." Pls.' 56.1 Stmt., Ex. 26.

In another Diplomatic Note, dated April 22, 2008, the Mexican Embassy stated that the victim "fully recognized and identified both of the accused as the people who committed the crimes . . . through photographs appearing in copies of the following documents: passport number 155378776, issued to Phil Anthony Simone . . . ." Note at 3.

5

"Tisi did not[:] try to get a copy of [Plaintiff-]Simone's passport[,] she made no inquiries to determine whether Plaintiff-Simone was in Mexico in 2002[,] she took no steps to obtain Passport number 155378776[,] she did not determine whether Plaintiff-Simone had been issued Passport number 155378776, or ask anyone else to make that determination[,] she did not check or ask anyone to check whether anyone named Phil Simone had traveled to Mexico in 2002[,] she made no inquiries about the whereabouts of Plaintiff-Simone in 2002 nor did she ask anyone to make such inquiries[,] she did not compare the photo sent with the diplomatic note with the DMV photo or ask anyone to do that[,] she did not interview the codefendant Thomas Grisard, who was already in custody, nor did she ask anyone to do that."

Pls.' 56.1 Stmt. ¶ 22 (citing Tisi Dep. 53, 56, 59-61).

On April 14, 2008, Tisi sent a draft complaint to the U.S. Attorney's Office in the Eastern District of New York. *Id.* at ¶ 20 (citing Email from Tisi to Judy Philips, *id.* at Ex. 29). As to this draft complaint, Assistant U.S. Attorney, Raymond Tierney, asked Tisi if she had a copy of Plaintiff-Simone's passport; Tisi said no. *Id.* at ¶ 23 (citing Tisi's Notebook/Call Log, *id.* at Ex. 32). On May 2, 2008, AUSA Richard Lunger—reassigned to the matter—filed a "Complaint and Affidavit in Support of Application for Arrest Warrant." *Id.* at ¶ 25 (citing *id.* at Ex. 33). The filing stated that the marshals "positively identified the defendant from a DMV photo that was compared to a photograph of the defendant provided by Mexican authorities." Complaint and Affidavit ¶ 4. Magistrate Judge Lindsay, Lunger's sworn affidavit, issued the arrest warrant on May 2, 2008. U.S. Marshals first executed the warrant at Plaintiffs' New Hyde Park, New York home and upon, interviewing Mrs. Simone, sent marshals to Plaintiff-Simone's place of work in New Jersey. *See* Def.'s 56.1 Stmt., Ex. O ¶¶ 10-12; *see also* Tisi Email to Mexican Government, Pls.' 56.1 Stmt., Ex. 34.

After interviewing Mrs. Simone, who stated that Plaintiff-Simone had not been to Mexico, Tisi contacted Mexican officials to ensure Plaintiff-Simone was the suspect Mexico

6

sought. *See* Def.'s 56.1 Stmt. ¶¶ 33-36. After reviewing the picture used by the victims to identify Suspect-Simone, Tisi realized that the person in that photograph did not match Plaintiff-Simone. *Id.* at ¶ 36. "We're fearful we have the wrong person arrested." Tisi Email to Mexican Government, Pls.' 56.1 Stmt., Ex. 36. Upon further review, AUSA Robert Kirsch (of the District of New Jersey) notified "Tisi that the Marshals had identified a registered sex offender named Phil Simone in Florida." Def.'s 56.1 Stmt. ¶ 37. Kirsch noted that Plaintiff-Simone's birthday did not match the birthday provided by Mexico in the diplomatic note. Pls.' 56.1 Stmt. ¶ 30 (citing Email from Mexican Government to U.S. Government, *id.* at Ex. 38). The Marshal's office "found another Phil Simone with the correct date of birth, place of birth, and a 1997 conviction for sexual assault . . . [who] now works in Florida . . . ." *Id.* at ¶ 30. The Marshals "accessed a three-page New Jersey Criminal History Detailed Report for 'Phil A. Simone.' " *Id.* at ¶ 31 (citing *id.* at Ex. 40). On May 6, 2008, Aponte emailed Tisi; Aponte asked, "[c]an you please let me know if there is some kind of litigation based on wrongful arrest?" *Id.* at ¶ 33 (citing *id.* at Ex. 42). On May 7, 2008 at 10:01 a.m., Tisi emailed Kirsch that Tisi's supervisor's "instinct was to withdraw the warrant and go through an expungement process, to remove [Plaintiff-]Simone's arrest from his record." *Id.* at ¶ 35 (citing *id.* at Ex. 44). "Can you wait until midday or do you think we should go in already to dismiss the warrant?" *Id.* Kirsch responded: "I do not believe we need to dismiss immediately, as I've bought us until at Monday. . . . It appears to me, absent some compelling information to the contrary, that this is likely the wrong Simone." *Id.* at ¶ 36 (quoting *id.* at Ex. 45). Upon further confirmation that Suspect-Simone was indeed the sought-after person, on May 9, 2008, the U.S. Attorney's office filed a Motion to Dismiss the complaint against Plaintiff-Simone. *Id.* at ¶¶ 32-40.

The Department of Justice has a guide to help its attorneys to review the sufficiency of incoming extradition requests from Mexico. Pls.' 56.1 Stmt. 17 (citing *id.* at Ex. 23). This guide "listed six items to 'check for' and the first one was 'Identity.' " *Id.* "Identity: Is there a photograph or a description of the fugitive? Is the fugitive's name a common one?" *Id.* If the attorney "cannot identify [the] fugitive with sufficient specificity" the attorney was to ask the Mexican Embassy "to provide additional information . . . pursuant to Article 12" of the Treaty. *Id.* United States Attorneys Criminal Resource Manual § 608(C) states, "[p]rosecutors must establish that the person whose extradition is sought is the one who is accused or was convicted. Do so with an affidavit from an identifying witness, together with a photo of the fugitive." *Id.* at ¶ 18 (citing *id.* at Ex. 24).

After exhausting their administrative remedies (Pls.' Am. Compl. ¶ 4), Plaintiffs filed suit against Defendant on September 10, 2009. *See* Compl., ECF No. 1. Defendant filed a Motion to Dismiss on April 2, 2010. ECF No. 14. The Court granted, in part, and denied, in part, Defendant's motion. Order, ECF No. 18 (hereinafter, "2010 Order"). In response to this Court's Order, Plaintiff filed an Amended Complaint on March 1, 2011. ECF No. 35. Defendant and Plaintiff filed their cross-motions on December 7, 2011 and December 8, 2011, respectively.

## C.    Claims

Plaintiffs bring four claims: (1) negligence: "Defendant had a duty to exercise reasonable care in determining that Simone was the 'Phil Anthony Simone' identified by the victims before it applied for an arrest warrant" (Pls.' Am. Compl. ¶¶ 34-37); (2) false arrest: "Defendant had a duty to refrain from arresting Simone for extradition to Mexico without probable cause" (*id.* at

8

¶¶ 39-43); (3) malicious prosecution because "[D]efendant knowingly commenced and continued a criminal proceeding against Simone with malice" (*id.* at ¶¶ 45-49); and (4) loss of consortium on behalf of Mrs. Simone. *Id.* at ¶¶ 51-52. In total, Plaintiff-Simone seeks $2,500,000, Mrs. Simone seeks $250,000, and Plaintiffs seek, jointly, "other and further relief as the Court may deem just and proper." *Id.* at ¶ 52(a)-(c).

## ANALYSIS

### A.    Defendant's Motion to Dismiss

#### 1.    Rule 12(b)(1) Motion – Subject Matter Jurisdiction

##### i.    Standard

Defendant filed a motion arguing that this Court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In deciding a Rule 12(b)(1) motion, the Court must "accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted). "[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* Plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.*

### ii.     The Court's Holding

Defendant argues that the Court must dismiss all of Plaintiffs' claims based on the actions of the prosecutors for lack of subject matter jurisdiction. *See* Def.'s Mem. Supp. 3-9.

In its memorandum in support of the present motion, Defendant quotes the Court's 2010 Order. *See, e.g.*, Def.'s Mem. Supp. 3 (quoting 2010 Order 30). Defendant fails to quote, however, the remainder of the Court's Order, wherein the Court held that Plaintiffs' negligence claim against the prosecutors survives Defendant's Rule 12(b)(1) motion. *Id.* at 27-28. The Court dismissed Plaintiffs' false arrest and malicious prosecution claims against the prosecutors. *Id.* at 28-32. The Court held that Plaintiffs' loss of consortium claim against the prosecutors survive, so long as Plaintiffs' negligence claim against the prosecutors survive a Rule 12(b)(6) motion and/or a motion for summary judgment. 2010 Order 33, n.21.

Defendant did not file a motion for reconsideration by which the Court would have reviewed its June 2010 Order for "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 147 (E.D.N.Y. 2010) (quoting *Cordero v. Astrue,* 574 F. Supp. 2d 373, 379–80 (S.D.N.Y. 2008)). Defendant certainly did not file a notice of such a motion with fourteen (14) days as provided by local rule 6.3, nor within twenty-eight (28) days as provided by Rule 52(b).[5]

---

5 Defendant is time-barred, of course, from filing a motion for reconsideration at this point. Defendant is similarly time-barred from appealing the decision to the Second Circuit Court of Appeals.

Rather, Defendant simply reasserts its view that the prosecutors are not liable for any of Plaintiffs' claims. The Court reviewed Defendant's Rule 12(b)(1) argument. The Court held in the 2010 Order that Plaintiffs' negligence claim, as to the prosecutors actions in New Jersey, survives Defendant's Rule 12(b)(1) motion. *See* Order at 27-28 (citing *Ramirez v. United States*, 998 F. Supp. 425, 429-35 (D. N.J. 1988) (*e.g.*, "[i]f the agents did not exercise the level of care that a reasonably prudent INS agent would have employed under the circumstances, then a cause of action for negligence may exist. This inquiry again depends upon the reasonableness of the conduct . . . ."). Moreover, as the Court held, under New York law, Plaintiff may not recover damages for negligence based upon wrongful arrest. 2010 Order 27, n.17 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Thus, negligence actions that took place in New York did not survive Defendant's Rule 12(b)(1) motion.

As to Plaintiffs' claims against the FBI, New Jersey case-law holds "that a police officer's negligence in fulfilling a ministerial, operational function he has undertaken, thereby causing injury or contributing to a death, is not immunized" under New Jersey's Tort Claims Act. *Ojinnaka v. Newark*, 18 A.3d 233, 240 (N.J. Super. Ct. Law Div. 2010). The State's Tort Claims Act provides additionally "a public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." *Id.* (quoting N.J. STAT. 59:2–3(a)). As the Court held in the 2010 Order, the Government's investigative function in the present case does not qualify for discretion function exemption to the FTCA. *See* 2010 Order 16-21 (*e.g.*, "the U.S. concedes . . . it lacked the discretion to investigate Mexico's request."). Moreover, FBI special

agents are law enforcement officers[6] and, as the Court held in the 2010 Order (*id.* at 28-32), law enforcement officers are liable under the FTCA for intentional torts. Therefore, all of Plaintiffs' claims against the FBI survive Defendant's Rule 12(b)(1) motion.

## 2.    Rule 12(b)(6) Motion – Failure to State a Claim

### i.    Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

> The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

*Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

In order to determine whether a claim is facially plausible, *Iqbal* sets forth a two-part inquiry: (1) the Court must identify those allegations that "are not entitled to the assumption or truth"; and (2) after eliminating any bare assertions, and conclusory allegations, the Court must

---

6 The FBI states that it is "an intelligence-driven and a threat-focused national security and law enforcement organization". OUR MISSION, http://www.fbi.gov/about-us/quick-facts.

consider the remaining factual allegations to determine if they "plausibly suggest an entitlement to relief." *Id.* at 681.

"The Court is limited to reviewing the complaint, any documents attached to the complaint or incorporated into it by reference, any documents that are 'integral' to the Plaintiffs' allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice." *Gilman v. Marsh & McLennan Cos., Inc.*, No. 10 Civ. 8158, 2012 WL 2196114, at *5 (S.D.N.Y. June 15, 2012) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). New facts and allegations, first raised in a Plaintiffs' opposition papers, may not be considered. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes."); *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000) ("parties are not entitled to assert new facts in submissions on a motion to dismiss."), *abrogated on other grounds, Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 24 (2003).

### ii.     The Court's Holding

#### a.     Negligence

##### i.     Standard

New Jersey and the District of Columbia require the same elements to prove negligence:[7] (1) the existence of a duty, (2) the breach of that duty, (3) actual damages, and (4) that the breach was the proximate cause of the injury. *See Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1123 (N.J. 2009) (citing *Polzo v. Essex*, 960 A.2d 375 (N.J. 2008)); *see also Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). How does the Court decide, however, whether Defendant owed a duty of reasonable care to Plaintiffs?

"Courts consider initially the factor of foreseeability as the predicate for the duty to exercise reasonable care." *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 213 (N.J. 1996). The "ability to foresee injury to a potential plaintiff does not in itself establish the existence of a duty, but it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Id.* at 212 (citing *Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 638 A.2d 1288 (N.J. 1994)).

"Once the foreseeability of an injured party is established, considerations of fairness and policy govern whether the imposition of a duty is warranted." *Id.* (citing *Carter Lincoln-Mercury, Inc.*, 638 A.2d 1288). "The assessment of fairness and policy 'involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the

---

7 As the Court held in the 2010 Order, under New York law, Plaintiffs may not recover damages for negligence based on wrongful arrest. 2010 Order 27, n.17.

attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.' " *Id.* (citing *Hopkins v. Fox & Lazo Realtors,* 625 A.2d 1110, 1116 (N.J. 1993)); *see also Brunson*, 972 A.2d at 1124 (citing *Hopkins*, 625 A.2d at 1116). "The analysis is [] very fact-specific." *Brunson*, 972 A.2d at 1124.

"The determination of such a duty is generally considered 'a matter of law properly decided by the court.' " *Id.* at 212 (citing *Wang v. Allstate Ins. Co.,* 592 A.2d 527 (N.J. 1991)); *see also Findlay v. CitiMortgage*, 813 F. Supp. 2d 108 (D.D.C. 2011) (holding that, under District of Columbia law, whether a duty exists is a question of law).

In the District of Columbia, the duty of reasonable care is established in the same way. *See, e.g., Hedgepeth v. William Whitman Clinic*, 22 A.3d 789, 793 (D.C. 2011) ("In general, courts rely on the concept of "foreseeability" to determine whether the defendant owed a duty to the claimant in a negligence action and examine whether the risk to the claimant was "reasonably foreseeable" to the defendant. (citing *District of Columbia v. Shannon,* 696 A.2d 1359, 1366 (D.C. 1997)).

"In negligence actions the standard of care by which the defendant's conduct is measured is often stated as 'that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." *Id.* at 794 (citing *Tolu v. Ayodeji,* 945 A.2d 596, 603 (D.C. 2008)).

Deviation from a statute or regulation regarding a government agent's course of conduct may constitute proof of negligence. *See Fair Oaks Hosp. v. Pocrass*, 628 A.2d 829, 836 (N.J. Super. Ct. Law Div. 1993) (citing *Evers v. Davis*, 90 A. 677 (N.J. 1914)).

## ii.    The Court's Holding

The Court's 2010 Order noted that, in *Ramirez*, the Plaintiffs' negligence claim survived the 12(b)(6) threshold; in other words, the *Ramirez* court held that the Government had a duty of reasonable care as to the plaintiff. The Court concurs with the *Ramirez* holding; the Court, as a matter of law, finds Defendant owed Plaintiff-Simone a duty of reasonable care. The Court finds that imposing a duty onto Defendant meets the *Hopkins* considerations. 625 A.2d at 1116. Certainly, the Amended Complaint asserts the risk of mistaken identity and that there were a multitude of opportunities, for each of the agencies, to exercise care. Further, there can be no question that there is a public interest in preventing this type of ordeal from happening in the future.

According to the facts contained within Plaintiffs' Amended Complaint, and using the State precedent reviewed herein, the harm to Plaintiff was foreseeable. "There were at least fourteen 'Phil Simones' living in the New York area at the time, including Sex Offender Simone." Pls.' Am. Compl. ¶ 13. If Defendant was negligent in its investigation, and misidentified one of the Phil Simones not wanted by the Mexican government, it is clearly foreseeable that that negligence might proximately cause injury to that innocent Phil Simone. The Amended Complaint asserts further that each agency deviated from the course of conduct demanded by the FTCA and that the OIA attorneys deviated from departmental procedures. *See Pocrass*, 628 A.2d at 836. This deviation "may constitute proof of negligence." *Id.*

Defendant argues the *Brunson* holding forbids a negligent investigation claim. Def.'s Mem. L. Supp. 19 ("the [*Brunson*] court stated that there was no claim for a negligent investigation which resulted in an arrest and prosecution."). The *Brunson* court, however, made

16

no such holding. Rather, the court held that—when analyzing the negligence-duty of reasonable care standard, including the public policy concerns—the "process requires that we analyze the conflicting concerns that arise from allowing an action for negligent investigation to go forward *when a malicious prosecution action is barred*." *Brunson*, 972 A.2d at 1124 (emphasis added). As the Court holds *infra*, Plaintiffs' malicious prosecution action is not barred; these "conflicting concerns", therefore, are not present in this case. Moreover, the *Brunson* court was concerned with "impos[ing] a duty of care on bank in respect to total strangers." *Id.* at 1125. Clearly, the alleged negligent parties herein are distinguishable from "banks in respect to total strangers." As such, once more, the present case is factually-distinguishable from *Brunson*.

After a review of the Amended Complaint, and reviewing it as true, the Court finds Defendant owed Plaintiffs a duty of reasonable care to determine that "[Plaintiff-] Simone was the 'Phil Anthony Simone" identified by the victims before it applied for an arrest warrant. Plaintiffs' motion asserts properly that Defendant breached this duty in its determination that Plaintiff-Simone was the person accused by Mexico of committing the crimes. The Amended Complaint asserts properly that Defendant's breach was the proximate cause of Plaintiffs' damages.

### b.     False Arrest

The Court's 2010 Order held that New Jersey law controls the false arrest claim. *See* 2010 Order 26-27. The Court held additionally that the prosecutors may not be held liable for the false arrest claim; the marshals, however, may be held liable. *Id.* at 30. As noted, Plaintiffs'

Amended Complaint added the FBI to the list of government agencies that allegedly committed torts.

### i.    Standard

"False arrest or false imprisonment is 'the constraint of the person without legal justification.' " *Ramirez*, 998 F. Supp. at 434 (citing *Fleming v. United Parcel Service, Inc.*, 604 A.2d 657, 680 (N.J. Super. Law Div. 1992)). False arrest "consists of two elements: '(1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal justification.' " *Id.* (citing *Fleming*, 604 A.2d at 680) (noting that "New Jersey courts treat false arrest and false imprisonment as the same tort.").

" 'Once a warrant is issued, or probable cause comes into existence, it becomes an officer's duty to arrest the suspect.' " *State v. Jones*, 667 A.2d 1043, 1048 (N.J. 1995) (citing S*mith v. Gonzales*, 670 F.2d 522, 527 (5th Cir. 1982)). "Officers have no discretion in making arrests where there is an outstanding warrant. In fact, had the officers failed to attempt to effectuate the warrant, they would have been derelict in their duties." *Id.* (citing *Stone v. State*, 620 So.2d 200, 201 (Fla. Dist. Ct. App. 1993)).

"Where a defendant files a false complaint which 'causes the issuance of a warrant upon which one is arrested [such actions do] not give rise to a cause of action for false imprisonment. The action must be one for malicious prosecution.' " *Fleming*, 604 A.2d at 680, n.4 (citing *Genito v. Rabinowitz*, 225 A.2d 590 (N.J. Super. Ct. App. Div. 1966)). "Malicious prosecution remains the sole theory for redress for one who has been injured by the wrongful institution of suit." *Id.* (citing *Devlin v. Greiner*, 371 A.2d 380 (N.J. Super. Ct. Law Div. 1977)). "The fundamental difference [between false imprisonment and malicious prosecution] is that under the

18

claim of false imprisonment, the detention is done without color of authority." *Pocrass*, 628 A.2d at 836 (citing *Earl v. Winne*, 101 A.2d 535, 540 (N.J. 1953) ("[t]he fundamental difference between an action for malicious prosecution and one for false imprisonment is that in the former the detention is malicious, but under the due forms of law, whereas in the latter the detention is without color of legal authority." (citing *Pine v. Okzewski*, 1170 A. 825 (N.J. 1934))).[8]

### ii. The Court's Holding

Defendant's Rule 12(b)(6) motion is granted as to Plaintiffs' false arrest claim. Plaintiffs' Amended Complaint fails to state a valid claim. First, Plaintiffs' Amended Complaint does not state a valid false arrest claim as to the FBI. The Amended Complaint fails to state that the FBI arrested Plaintiff-Simone; as such, Plaintiffs present no valid false arrest claim as to the FBI.

Once the court issued the warrant, the Marshals "were not at liberty to disregard this order; indeed, they were duty-bound to expeditiously comply with it. Moreover, they were neither obligated nor empowered to question its validity." *Druckenmiller v. United States*, 548 F. Supp. 193, 195 (D. Pa. 1982) (citing *Turner v. Raynes*, 611 F.2d 92, 93 (5th Cir. 1980); *Atkins v. Lanning*, 556 F.2d 485, 487 (10th Cir. 1977); *Perry v. Jones*, 506 F.2d 778, 780 (5th Cir. 1975); *Bezdek v. Elmhurst*, 70 F.R.D. 636, 639 (N.D. Ill.1976)). As Defendant notes, the Marshals were "obligated to fulfill the purpose of a facially valid warrant that has been approved by a judicial

---

8 "[F]alse arrest and false imprisonment are not separate torts; they are different names for the same tort." *Price v. Phillips*, 218 A.2d 167, 169 (N.J. Super. Ct. App. Div. 1966) (citing Prosser on Torts § 12 (3d ed. 1964); *Winne*, 101 A.2d 535)).

officer." Def.'s Mem. L. Supp. 11 (citing *Rodriguez v. Bridgeport*, No. 3:03 CV 1597, 2005 WL 3307274, at *7 (D. Conn. Dec. 2, 2005)).

The *Rodriguez* court cited two cases in support of this holding: *Dirienzo v. United States,* 690 F. Supp. 1149, 1154 n. 4 (D. Conn. 1988) and *Benjamin v. United States,* 554 F. Supp. 82, 86 (E.D.N.Y. 1982). *See* 2005 WL 3307274, at *7. The *Rodriguez* court quoted *Benjamin*: "under the Federal Rules of Criminal Procedure, once probable cause has been established by a judicial officer, and an arrest warrant issued, the warrant *shall* be executed by the arrest of the defendant." *Id.* (emphasis in original). The Marshals were indeed duty-bound to effect the arrest.

The *Benjamin* court held additionally that while "the police cannot insulate themselves from liability for false arrest by obtaining a warrant with perjurious affidavits, only *intentional* fabrication of facts material to the probable cause determination will generate tort liability." *Benjamin,* 554 F. Supp. at 86 (citing *Rosario v. Amalgamated Ladies Garment Cutters' Union,* 605 F.2d 1228, 1248 (2d Cir. 1979)) (emphasis added). Plaintiffs' Amended Complaint fails to state that any party intentionally fabricated facts to generate probable cause.

For false arrest purposes, therefore, Plaintiffs fail to state a valid claim that meets the *Iqbal* test to survive a Rule 12(b)(6) motion.

### c. Malicious Prosecution

As with Plaintiffs' false arrest claim, the Court's 2010 Order held that Defendant is not be liable for malicious prosecution as to the prosecutors. *See* 2010 Order 30. Plaintiffs' claim, however, proceeded beyond the subject matter jurisdiction stage as to the Marshals. *Id.* As held

*supra*, the Court has subject matter jurisdiction regarding the FBI actions for intentional torts. The Court, therefore, examines this claim as to the actions of the Marshals and the FBI.

### i.    Standard

"Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009) (citing *Winne*, 101 A.2d at 540). "Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *Id.* (citing *Lind v. Schmid,* 337 A.2d 365, 368 (N.J. 1975)). "Although each factor is distinct, 'evidence of one may be relevant with respect to another.' " *Id.* (citing *Lind,* 337 A.2d at 368). "Nevertheless, each element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." *Id.* (citing *Klesh v. Coddington,* 684 A.2d 530 (N.J. Super. Ct. Law Div. 1996)).

"Malicious prosecution is not a favored cause of action because citizens should be inhibited in instituting prosecution of those *reasonably* suspected of crime." *Brunson,* 972 A.2d at 1124 (emphasis added).

The action was terminated favorably to Plaintiff-Simone. The Court must determine whether Plaintiffs' Amended Complaint validly asserts elements one through three.

### a. Institution of Criminal Proceedings

A party need not sign a criminal complaint to institute a criminal proceeding. *See Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1161 (N.J. Super. Ct. App. Div. 2004) ("the mere fact that [the defendant] did not sign the complaint . . . is not alone determinative.").

> [T]his factor may be met by proof that defendant took "some active part in instigating or encouraging the prosecution" or "advising or assisting another person to begin the proceeding, or by ratifying it when it is begun in defendant's behalf, or by taking any active part in directing or aiding the conduct of the case."

*Id.* (quoting W. PAGE KEETON, PROSSER AND KEATON ON TORTS § 119 (5th ed. 1984)).

> [T]here is no support for the proposition . . . that liability for malicious prosecution only attaches to the actual signers of the underlying criminal complaint . . . . We are satisfied that the jury could have inferred from the evidence offered by plaintiff that . . . [the defendant] encouraged, participated in, and perhaps even pressured the [] police to prosecute plaintiff. In short, there was evidence in the record that the jury could have found credible and drawn inferences therefrom that [the defendant] was the "proximate and efficient cause of maliciously putting the law in motion."

*Id.* (quoting *Seidel v. Greenberg*, 260 A.2d 863 (N.J. Super. Ct. Law Div. 1969)).

### b. Malice

"Malice in this connection means the intentional commission of a wrongful act without just cause or excuse." *Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 252 (N.J. Super. Ch. Div. 1951) (citing *Brennan v. United Hatters*, 65 A. 165 (N.J. 1906); *Kamm, Inc. v. Flink*, 175 A. 62 (N.J. 1934)).

> [M]alice in the law means nothing more than the intentional doing of a wrongful act without justification or excuse. And what is a wrongful act within the meaning of this definition? We answer, any act which in the ordinary course will infringe upon the rights of another to his damage is wrongful except it be done in the exercise of an equal or superior right. In *Mogul Steamship Co. v. McGregor*, [] Lord Justice Bowen said: 'Now, intentionally to do that which is calculated in the

22

> ordinary course of events to damage, and which does in fact damage another in that other person's property or trade, is actionable if done without just cause or excuse. Such intentional action, when done without just cause or excuse, is what the law calls a malicious wrong.

*Id.* (citing *United Hatters*, 65 A. at 171).

"An essential element of the tort of malicious prosecution is actual malice." *Brown-Hill Morgan, LLC v. Lehrer*, 2010 WL 3184340, at \*14 (N.J. Super. App. Div. August 12, 2010)[9] (citing *Vickey v. Nessler*, 553 A.2d 34 (N.J. Super. Ct. App. Div. 1989)). Actual malice means an action done "with knowledge that it was false or with *reckless disregard* of whether it was false or not." *Durando v. Nutley Sun*, 37 A.3d 449, 458 (N.J. 2012) (citing *New York Times Co. v. Sullivan*, 376 *U.S.* 254, 279–80 (1964) as to actual malice in First Amendment disparagement cases.);[10] *see also Marchiano v. Sandman*, 428 A.2d 541, 543 (N.J. Super. Ct. App. Div. 1981) (noting the *New York Times Co.* holding and restating that actual malice means "knowledge that it was false or [done] with *reckless disregard*".); *see also Brunson*, 972 A.2d at 1117, 1122 (upholding the trial court's decision, the *Brunson* court noted "[the trial court] summed up its reasoning as follows: 'the Court finds that there was no willful or *reckless* presentation of evidence.' ") (emphases added). Actual malice "must be established with 'convincing clarity.' " *Id.* (citing *Sullivan*, 376 U.S. at 285–86).

---

9 No case number available.

10 The *Durando* court held that "[a]ctual malice is defined similarly under federal and state law." *Id.* (citing *Rocci v. Ecole Secondaire Macdonald–Cartier*, 755 A.2d 583 (N.J. 2000) in noting that the *Rocci* court "treat[ed] common-law actual malice and constitutional actual malice synonymously." *Id.*).

23

### c.   Probable Cause

Probable cause "has a well-established meaning arising in criminal law and therefore an equally plain meaning when used in the context of an action for malicious prosecution." *LoBiondo*, 970 A.2d at 1024.

> [T]he probable cause element could fairly be described as rather elusive. Probable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in dispute. Whether decided by the court or a jury, the inquiry into whether there was probable cause is determined by means of an objective analysis. The question to be decided is whether, in the prior suit, the facts supported the actor's "honest belief" in the allegations.
>
> In this context, honest belief means, using the reasonable prudent person standard, a reasonable belief that there was a good or sound chance of establishing the claim to the satisfaction of the court or the jury. It has been held, for example, that "reasonable or probable cause for the institution of a civil suit is the presence of reasonable ground for belief that the cause of action exists supported by circumstances sufficient to warrant an ordinarily prudent man in the belief that it exists."

*Id.* (internal citations omitted).

"Not all of those elements are of equal weight. It is understood that 'the essence of the cause of action is lack of probable cause.' Particularly, 'the plaintiff must establish a negative, namely, that probable cause did not exist.' " *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1119 (N.J. 2009) (citing *Lind v. Schmid*, 337 A.2d at 368).

### ii.   The Court's Holding

Plaintiffs' Amended Complaint states a valid malicious prosecution claim regarding the FBI's actions and the Marshals actions. First, the Amended Complaint asserts that the FBI assisted the OIA and the U.S. Attorney's Office in beginning the proceeding and that the FBI

24

took an active part in directing or aiding the conduct of the case. *See Epperson*, 862 A.2d at 1161. According to the Amended Complaint, Special Agents Karaminas, Vickery, Butsch played active roles in identifying Plaintiff-Simone. The Amended Complaint asserts, further, that the Marshals "actively participated in the warrant application[,] recklessly identified [Plaintiff-Simone,] . . . and their identification was cited by [AUSA] Lunger in his [warrant] presentation to the court." Pls.' Mem. L. Opp'n 15.

Second, the Amended Complaint asserts that the FBI and the Marshals acted with reckless disregard. As noted *supra*, reckless disregard is actual malice. As held in *Brunson*, malicious prosecution is not favored when a person is *"reasonably* suspected of a crime." 972 A.2d at 1124 (emphasis added). Defendant argues that this was a case of mistaken identity. *See* Def.'s Mem. L. Supp. 1. As such, Defendant concedes—and the Amended Complaint obviously asserts—that Plaintiff-Simone was not reasonably suspected of crime.

Third, because of this reckless disregard, there was an absence of probable cause to prosecute. As the Court noted in the 2010 Order, "the Marshals were on notice that something was amiss with Mexico's application; they had reason to seriously doubt the veracity of Mexico's allegations." 2010 Order 14-16. The Amended Complaint asserts that "at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed" by Plaintiff-Simone. *Brunson*, 972 A.2d at 1121. Finally, as noted, "the action was terminated favorably to the plaintiff." *LoBiondo*, 970 A.2d at 1022.

### d.　Loss of Consortium

#### i.　Standard

"New Jersey has long recognized a spouse's derivative claim for loss of consortium when there is an underlying claim for negligence." *Friedman v. Klazmer*, 718 A.2d 1238 (N.J. Super. Ct. Law Div. 1998).

> A spouse is entitled to loss of consortium upon showing of several factors, including a strong emotional reliance on each other, a relationship of long duration, and a high degree of mutual dependence. "The severity of the loss is dependent on the quality of the pre-injury relationship. Impairment of the consortium includes not only the loss of the injured spouse's services but also its reciprocal burdening of the other spouse."

*Anderson v. A.J. Friedman Supply Co., Inc.* 3 A.3d 545, 559 (N.J. Super. Ct. App. Div. 2010) (citing *Dunphy v. Gregor,* 642 A.2d 372 (N.J. 1994); quoting *Thalman v. Owens-Corning Fiberglas Corp.,* 676 A.2d 611 (N.J. Super. Ct. App. Div. 1996)).

#### ii.　The Court's Holding

Plaintiffs' negligence claim and malicious prosecution claim survive Defendant's Rule 12(b)(6) motion. The Court finds Plaintiffs' Amended Complaint asserts a valid loss of consortium claim.

**B.** **Parties' Cross-Motions for Summary Judgment**

    **1.** **Standard**

        **i.** **Summary Judgment**

A party's motion for summary judgment may not be granted unless the Court determines that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). "Summary judgment may be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law.' " *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). The Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Castle Rock Entm't, Inc. v. Carol Publ'g Group*, 150 F.3d 132, 137 (2d Cir. 1998).

"A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.' " *Amnesty Am. v. West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "[T]he judge's function [in reviewing a motion for summary judgment] is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

The Supreme Court has held that, when opposing parties' versions of events differ substantially, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.' " *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"The United States is entitled to assert the defense of prosecutorial immunity in FTCA cases . . . ." *Doe v. United States*, 829 F. Supp. 59, 61 (S.D.N.Y. 1993).

Prosecutors enjoy different levels of immunity depending on the type of actions they are undertaking. "It is firmly established that prosecutors are entitled to absolute immunity from suits for damages arising from activities that are 'intimately associated with the judicial phase of the criminal process.' " *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430-31 (1976)). On the other hand, "when a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available." *Barbera*, 836 F.2d at 99 *(quoting Powers v. Coe,* 728 F.2d 97, 103-04 (2d Cir. 1984)).

Instead, prosecutors performing these actions may be protected by qualified immunity. Prosecutors are entitled to qualified immunity from suit in these and other similar situations so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barbera*, 836 F.2d at 100 *(quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A prosecutors' liability depends on the objective reasonableness of their actions, considered in light of clearly established law and the individual

28

circumstances of each case. *See Saucier v. Katz*, 533 U.S. 194, 199-200 (2001). A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Id.* at 202.

## 2. The Court's Holding

### i. Negligence

As noted *supra*, as to Defendant's Rule 12(b)(1) motion, this Court held, in its 2010 Order, that Plaintiffs' negligence claim "may proceed against the United States based on the action of both the Prosecutors and the Marshals." 2010 Order 28. As held *supra*, the Plaintiffs' negligence claim as to the FBI survived Defendant's Rule 12(b)(1) motion. Plaintiffs' negligence claim as to the FBI, Marshals, and the Prosecutors survived Defendant's Rule 12(b)(6) motion.

The Court held, as a matter of law, Defendant owed Plaintiffs a duty of reasonable care. *Supra* 16. Plaintiff must still prove: (1) Defendant breached that duty, (2) Plaintiff incurred actual damages, and (3) that Defendant's breach was the proximate cause of the injury. *See Brunson*, 972 A.2d at 1123; *Hedgepeth*, 22 A.3d at 793. As such, the question presently before the Court is whether there are issues of fact as to those remaining elements of Plaintiffs' negligence claim. The Court finds that there are questions of fact. In reviewing the facts herein, and using applicable New Jersey precedent, "[a]ccepting as true plaintiffs' evidence and giving to it every inference of fact that can legitimately be drawn therefrom, there is sufficient evidence to present a jury question as to the negligence of each of these defendants." *Mickens v. Marascio*, 279 A.2d 666, 668 (N.J. 1971); *see also Gallara v. Koskovich*, 836 A.2d 840, 853 (N.J. Super. Law Div. 2003) ("Generally, questions of proximate and intervening cause are left to the jury for

its factual determination . . . . Therefore, in the context of [the] summary judgment application, the question becomes whether the facts presented, when viewed in a light most favorable to plaintiffs, compel a finding of no liability as a matter of law." (internal citations omitted)).

The Court finds the same under District of Columbia precedent. *See, e.g., Speights v. 800 Water St., Inc.*, 4 A.3d 471, 475 (D.C. 2010) ("Proximate cause of an injury is ordinarily a question of fact for the jury . . . . Only if there were absolutely no facts or circumstances from which a jury could reasonably have found that [Defendant was] negligent and that such negligence was the proximate cause of the injury, would the question have been one for the court." (internal citations and quotations omitted)). The Court denies, therefore, the parties' cross-Motions for Summary Judgment as to Plaintiffs' negligence claim.[11]

### ii.      Malicious Prosecution

"Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo*, 970 A.2d at 1022.

There are no questions of fact that a criminal action was instituted by the Defendant against Plaintiff-Simone; nor is there a question of fact that the action was terminated favorably to the Plaintiff-Simone. The Court held in the 2010 Order (after a thorough review of the Amended Complaint and applicable legal precedent) that probable cause did not exist. *See* 2010

---

11 The Court, at this stage of the proceedings, is not acting as fact-finder; rather, the Court's job is to determine whether a reasonable fact-finder may rule in favor of Plaintiffs.

Order 11-16. As to malice or reckless disregard, in the 2010 Order, the Court noted further that the Court "believed" that Defendant was reckless or grossly negligent. *Id.* at 14. After a review of all of the submitted evidence, the Court's determination on that issue has not changed. The Court understands, however, that the Court is not the fact-finder at this stage of the proceedings. After a trial, the Court may find that Defendant did not exhibit reckless disregard (*i.e.*, actual malice) in its actions; therefore, the Court denies the parties' cross-Motions for Summary Judgment as to the malicious prosecution claim.

### iii. Loss of Consortium

Since Plaintiffs' negligence and malicious prosecution claims survive Defendant's Motion for Summary Judgment, Plaintiffs' loss of consortium claim, as a derivative claim, survives as well.

## C. Conclusion

For the foregoing reasons, the Court: (1) **DENIES** Defendant's Rule 12(b)(1) Motion to Dismiss; (2) **DENIES**, in part, and **GRANTS**, in part, Defendant's Rule 12(b)(6) Motion to Dismiss; and (3) **DENIES** the parties' cross-Motions for Summary Judgment.

**SO ORDERED.**

Dated: October 9, 2012
      Central Islip, New York

/s/ Thomas C. Platt

Thomas C. Platt, U.S.D.J.

31